**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

KAMAL K. PATEL
Reg. #56496-080                                                                        PLAINTIFF

V.                                    4:09CV00108 SWW/JTR

Defendant EARL PEEPLES; and
ORTHOARKANSAS                                                                DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright.   Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.      An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, Kamal Patel, a federal prisoner, alleges in his pleadings that Defendants, Dr. Earl Peeples and OrthoArkansas, violated his constitutional rights and committed several state torts. *See* docket entry #1. Defendants have filed a Motion for Summary Judgment, an Amended Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts. *See* docket entry #16, #17, #18, and #91. Plaintiff has filed a Response, a Brief in Support, a Statement of Disputed Facts, and an Appendix of Exhibits. *See* docket entries #64, #65, #66, and #67. Before discussing the merits of the Motion, the Court will summarize the relevant, undisputed facts.

On May 15, 2001, Plaintiff injured his right biceps tendon while playing basketball at a federal prison in Oklahoma. *See* docket entries #18 and #66. In 2004, while he was incarcerated in the federal prison located in Forrest City, Arkansas, Plaintiff filed *Patel v. United States*, 4:04CV00771.[1] In his Complaint, he alleged, among other things, that he received negligent medical

---

[1]   Plaintiff was later transferred to several different federal prisons. Ultimately, *Patel v. United States* was transferred to the Western District of Oklahoma, which is where Plaintiff alleges the injury occurred. *See Patel v. United States*; 5:08CV001168 (W.D. Okl.).

treatment at several different federal prisons. *Id.*

Defendant, Dr. Earl Peeples ("Dr. Peeples"), is a private orthopedic surgeon, who works for Defendant OrthoArkansas. *Id.* On March 16, 2006, he entered into a contract with the federal government to serve as an expert witness in *Patel v. United States*.[2] *See* docket entry #16, Exs. A and D. Dr. Peeples was retained for the limited purpose of reviewing Plaintiff's extensive medical records and giving an opinion on whether the medical care Plaintiff received for his biceps tendon was consistent with the community standard of care.[3] *Id. At no time did Dr. Peeples ever examine or treat Plaintiff.  Id.*

In a letter dated June 7, 2006, Defendant Peeples set forth his expert medical opinion that Plaintiff had received appropriate care for his injured biceps tendon and that surgical repair was not necessary. *Id.*, Ex. E.  This letter was prepared for use by the attorney for the United States in *Patel v. United States*, 4:04CV00771.  Dr.  Peeples noted that two different orthopedic surgeons determined, in 2003 and  2004, that:  (1) Plaintiff had normal strength and range of motion in his right arm; and (2) surgery was not necessary.  *Id.*  Dr. Peeples also noted a medical report, dated October 13, 2004, which stated that Plaintiff "has been diagnosed with Tourette's disorder" and "obsessively pursues administrative remedies against a myriad of departments and staff members" that are "reportedly trivial and frivolous."[4]  *Id.,* Ex. E at 11.  Finally, Dr. Peeples expressed his own

---

[2]  The contract expired on December 31, 2006.  *See* docket entry #16, Ex. D.

[3]  On May 19, 2006, the attorney defending *Patel v. United States* sent Dr. Peeples a letter asking him to also evaluate the care Plaintiff received for a herniated disc in his neck.  *See* docket entry #16, Ex. C.  In his Complaint, Plaintiff doe not make any allegations against Dr. Peeples regarding the opinions he rendered about the medical treatment Plaintiff received for his herniated disc.  *See* docket entry #1. Accordingly, those opinions are not relevant to this case.

[4]  The October 13, 2004 report was prepared by Dr. J. Lee Hoover, whose medical speciality is not specified.  *See* docket entry #16, Ex. E.  It is unclear when Plaintiff was first diagnosed with

opinion that:

> *If,* indeed, [Plaintiff's] multiple administrative complaints are an expression of Tourette's syndrome, they are thereby not legitimate, well thought out actual complaints, but rather an expression of an underlying problem and should be handled appropriately, politely and basically ignored, as would the inappropriate language of a typical Tourette's syndrome.

*Id*. at 12 (emphasis added).

Dr. Peeples' June 7, 2006 letter was later attached to the United States' Motion for Summary Judgment in *Patel v. United States.*  This Motion was granted, and Plaintiff's case was dismissed, with prejudice. *See Patel v. United States*; 5:08CV01168 (W.D. Okl.) (docket entries #305 and #306).

In August of  2006, Plaintiff was incarcerated in federal prison in North Carolina.  Dr. Samuel Stanley, an orthopedic surgeon, examined Plaintiff's biceps tendon.  *See* docket entry #16, Ex. G.  Dr. Stanley noted that he was "skeptical, given the length of time since the initial injury, whether [the tendon] could be repaired [surgically]."  He recommended an MRI of Plaintiff's arm and a return consultation to determine if surgery was appropriate.  *Id.*

On August 22, 2006, Plaintiff had an MRI which showed a "chronic biceps tendon rupture with >3cm of tendon retraction."  *Id.*, Ex. G.   It is unclear whether that MRI was ever sent to Dr. Stanley, or whether he reexamined Plaintiff.  Plaintiff has produced a January 16, 2007 Consultation Request which appears to state that federal prison authorities approved surgical repair of Plaintiff's biceps tendon by Dr. Stanley.[5] *See* docket entry #2, Ex. 10.   However, the surgery never occurred. *See* docket entries #18 and #66.

---

Tourette's syndrome or who made that diagnosis.  *Id.*

[5]  It is very difficult to read this handwritten document.  *See* docket entry #1, Ex. 10.

On an unspecified date, an attorney for the United States sent Dr. Stanley's consultation report to Dr. Peeples.[6]  *See* docket entry #18.  On March 7, 2007, Dr. Peeples sent a letter to the government's attorney stating that Dr. Stanley's consultation note was based upon Plaintiff's subjective complaints and allegations, and not upon a review of Plaintiff's extensive medical records.  *See* docket entry #16, Ex. H.  Dr. Pepples then stated that:

> Mr. Patel [has] continued to seek treatment for a situation which is stable and which has been, on numerous occasions, evaluated by orthopedic surgeons and found not to require treatment. I do not believe that further MRI evaluation or additional treatment is appropriate.
>
> It is my recommendation that any surgeon who evaluates him should review this letter reflecting the repeated studies and non-surgical recommendations previously made and place his complaints in context of that history.  Mr. Patel has received care and evaluation over and above that available to most citizens in the United States and it is my strong opinion as a physician that he has been clearly found to have a right biceps tendon abnormality which does not require treatment or surgical intervention.
>
> Dr. Stanley should also be provided . . . a copy of my report and the medical files so that he may make his medical decisions on the basis of the large amount of previous evaluation and treatment that has been provided and summarized in my report.

*Id.* at 2.

Plaintiff alleges that Dr. Stanley canceled his scheduled surgery based on Dr. Peeples' March 7, 2007 letter.  *See* docket entry #1.  However, there is *no evidence* that a copy of  Dr. Peeples' March 7, 2007 letter was placed in Plaintiff's prison medical records or that any of his treating

---

[6] Dr. Peeples written consulting agreement with the United States expired on December 31, 2006.  *See* docket entry #6, Ex. D.  It is unclear whether the government consulted with Dr. Peeples about Dr. Stanley's report before or after December 31, 2006.  If this contact occurred after December 31, 2006, it can only mean that the parties verbally agreed to extend Dr. Peeples' written consulting agreement with the United States.

physicians ever saw the letter.

## II.  Discussion

**A.     Plaintiff's *Bivens* Claims Against Dr. Peeples and OrthoArkansas[7]**

According to Plaintiff, Dr. Peeples and OrthoArkansas violated his Eighth Amendment right to adequate medical care by preventing him from receiving corrective surgery for his biceps tendon, and violated his Fifth Amendment right to equal protection by discriminating against him based upon his national origin.[8]  *See* docket entry #2.

As a threshold matter, the Court must first determine if OrthoArkansas and Dr. Peeples are "federal actors," who may be held liable for these two alleged constitutional violations.

### 1.     Eighth Amendment Inadequate Medical Care Claim

In a *Bivens* action, a defendant may not be found vicariously liable for the actions of others. *See Ashcroft v. Iqbal*  129 S.Ct. 1937, 1948 (2009).  Thus, Defendant OrthoArkansas can only be liable if Plaintiff's injury was caused by the company's official policy or custom.  *See Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006); *see also Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 975-976 (8th Cir. 1993).  Plaintiff has not made any such allegations or come forward with any

_____

[7] Because Plaintiff is a federal inmate alleging constitutional violations against federal actors, his claims are brought under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  In *Bivens*, the Court held that the victims of constitutional violations by federal actors have a right to recover damages in federal court, just as 42 U.S.C. § 1983 provides redress for constitutional violations by state officials. *See also Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) (explaining that "a *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983"); *Duffy v. Wolle*, 123 F.3d 1026, 1037 (8th Cir. 1997) (explaining that the general trend in ppellate courts is to incorporate § 1983 law into *Bivens* lawsuits).

[8] In his Response to Defendants' Motion for Summary Judgment, Plaintiff also asserts that Defendants discriminating against him based upon his religious beliefs. *See* docket entry #65.  Apart from *not* raising that claim in his Complaint, Plaintiff has not offered *any* evidence to support it.  Accordingly, the Court need not consider it.

evidence suggesting that his injuries were caused by a violation of an OrthoArkansas official policy or custom.  Accordingly, Defendant OrthoArkansas is entitled to summary judgment on *both* of Plaintiff's constitutional claims.

Dr. Peeples argues that he is entitled to summary judgment on both constitutional claims because he is a private physician, and not a federal actor.  However, in *West v. Atkins*, 487 U.S. 42, 48 (1988), the Court made it clear that a private physician, who agrees to provide medical services to inmates, on a part-time basis, is a state actor.  Of course, in this case, Dr. Peeples was not employed to provide medical services to prisoners.  Rather, he was employed solely as an expert witness for the United States in defending against the medical claims made by a prisoner in a *Bivens* action.  Nevertheless, because all of Plaintiff's claims against Dr. Peeples arise from his role as an expert witness for the United States, he must still be deemed a federal actor under *West*.

Dr. Peeples also contends that he is entitled to absolute immunity for his actions as a witness in a lawsuit.  *See Briscoe v. LaHue,* 460 U.S. 325, 334-335 (1983) (holding that § 1983 does not abrogate absolute immunity existing at common law for witnesses who testify in a judicial proceeding).

The Court concludes that this argument has merit.  In both his June 7, 2006 and March 7, 2007 letters, Dr. Peeples is clearly setting forth his opinions, as an expert witness for the government,  about the ongoing litigation by Plaintiff against the United States.  Nothing in the record suggests that Dr. Peeples' role was ever anything other than an expert witness for the United States, which was being sued by Plaintiff for inadequate medical care he allegedly received for his injured biceps tendon.  Accordingly, Dr. Peeples is entitled to absolute immunity for his actions as a witness for the United States.

Even if Dr. Peeples was not entitled to absolute immunity, Plaintiff still could not prevail on his Eighth Amendment inadequate medical care claim against him.  To prevail on the merits of an inadequate medical care claim under the Eighth Amendment, a prisoner must prove that:  (1) he had an objectively serious medical need; and (2) prison officials subjectively knew of, but deliberately disregarded, that serious  medical need.  *Estelle v. Gamble,* 429 U.S. 97 (1976); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)

The parties do not dispute that Plaintiff's ruptured biceps tendon was an objectively serious medical need.  However, they disagree sharply over whether Dr. Peeples was deliberately indifferent to that need when, according to Plaintiff, Dr. Peeples "encouraged" Dr. Stanley to cancel the surgery on Plaintiff's biceps tendon.  As a matter of law, Plaintiff's theory of deliberate indifference fails to state an Eighth Amendment claim.

First, it does not appear that the surgery for Plaintiff's biceps tendon injury was ever scheduled by Dr. Stanley, which would make it impossible for Dr. Peeples to have "encouraged" Dr. Stanley to cancel it.  Similarly, it also does not appear that Dr. Stanley received a copy of Dr. Peeples' March 7, 2007 letter.  However, even if the Court were to assume that Dr. Stanley canceled the surgery, based on Dr.  Peeples's letter, it is well settled that a prisoner's disagreement with a medical provider's treatment decisions does *not* rise to the level of a constitutional violation.  *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006); *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 2001).

Second, Plaintiff has failed to come forward with any evidence establishing that Dr.  Peeples was *deliberately indifferent* when he expressed his opinion that surgery for Plaintiff's biceps tendon was unwarranted and inadvisable.  *See Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) (holding

that deliberate indifference "requires proof of a reckless disregard"); *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998) (explaining that deliberate indifference is "deliberate inaction amounting to callousness"); *Estate of Rosenberg*, 56 F.3d at 37 (providing that negligence or even gross negligence in making treatment decisions is insufficient to establish deliberate indifference). To the contrary, Dr. Peeples' opinion was consistent with the 2003 and 2004 opinions of two other orthopedic surgeons.

Finally, it is undisputed that, in expressing his  medical opinion about Plaintiff's biceps tendon injury, Dr. Peeples was acting as an expert witness.   As such, Dr. Peeples clearly had *no authority* to cancel or schedule surgery for Plaintiff.  Thus, even if Dr. Stanley knew about Dr. Peeples' opinion that Plaintiff did not need surgery, Dr. Stanley was free to disregard that opinion and make his own independent determination.

In light of these undisputed facts, it is clear that Dr. Peeples is entitled to summary judgment on Plaintiff's inadequate medical care claim.

### 2.      Fifth Amendment Equal Protection Claim[9]

Plaintiff, who is a British citizen, alleges that Dr. Peeples violated his Fifth Amendment right to equal protection when he discriminated against him based upon his national origin.  *See* docket entry #1.  The sole support for this claim rests on Dr. Peeples' statement, in his March 7, 2007 letter, that: "Mr. Patel has received care and evaluation over and above that available to most citizens in

---

[9] The Fifth Amendment, which applies to the federal government, does not contain an express equal protection clause.  U.S. CONST. amend X.  Nevertheless, it is "settled that the concept of due process of law prohibits the federal government from discriminating against any person on such irrelevant and invidious grounds as race, color, religion, or national origin." *Johnson v. Alexander,* 572 F.2d 1219, 1220 (8th Cir. 1978); *see also Reutter ex rel. Reutter v. Barnhart,* 372 F.3d 946, 952 (8th Cir. 2004) (referring to the "equal protection component of the Fifth Amendment due process clause").

the United States. . . ." *See* docket entry #16, Ex. H.

To prevail on an equal protection claim, a prisoner must demonstrate that he was treated differently from similarly-situated inmates and that the different treatment was based upon either a suspect classification or fundamental right. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008); *Weems v. Little Rock Police Dept.,* 453 F.3d 1010, 1016 (8th Cir. 2006).

National origin is a suspect classification. *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999). However, Plaintiff has not offered *any* evidence suggesting that he was treated differently than similarly situated non-British citizens. *See Habhag v. Hon*, 536 F.3d 963, 967 (8th Cir. 2008) (affirming summary judgment where a plaintiff failed to produce evidence demonstrating that he was treated differently than similarly situated individuals).

Finally, it is sheer speculation to suggest that the statement by Dr. Peeples was intended to refer to Plaintiff's nationality. Rather, in referring to "most citizens of the United States," Dr. Peeples was comparing "freeworld citizens" with all "convicted prisoners," regardless of their nationality.

Thus, Dr. Peeples is entitled to summary judgment on Plaintiff's equal protection claim.

**B.     State Tort Claims Against Defendants Peeples and OrthoArkansas**

**1.     Libel Claim**

Plaintiff alleges that Defendants committed the tort of libel when Dr. Peeples falsely stated, in his June 7, 2006 letter, that Plaintiff suffered from Tourette's syndrome. *See* docket entry #2. Defendants argue that this claim is barred by the one-year statute of limitations. *See* docket entry #17.

There are two types of defamation cases under Arkansas law: (1) slander, which is for untrue

spoken words; and (2) libel, which is for untrue written words. *Dodson v. Allstate Ins. Co.*, 231 S.W.3d 711, 716 (Ark. 2006); *Northport Health Serv, Inc. v. Owens*, 158 S.W.3d 164, 641 (Ark. 2004). The allegedly false written statements in Dr. Pepples June 7, 2006 letter are libel, not slander.

The statute of limitations for libel actions is *three* years. *Compare* Ark. Code Ann. § 16-56-105(5) (providing that a three-year limitations period applies to "actions for libel") *with* Ark. Code Ann. § 16-56-104(3) (providing that a one-year statute of limitations period applies to "actions for words spoken slandering the character of another"). Dr. Pepples made his allegedly libelous statements on June 7, 2006. The statute of limitations expired three years later, on June 7, 2009. Plaintiff filed his Complaint on February 12, 2009, which was 115 days *before* the limitations period expired. *See* docket entry #1. Thus, Plaintiff's libel claim is *not* barred by the statute of limitations.

Defendants next argue that Plaintiff has failed to come forward with any evidence to support his claim that anything in Dr. Peeples' June 7, 2006 letter was "false." *See* docket entry #17. To prevail on a libel claim, a plaintiff must demonstrate, among other things, that the written statement was false. *See Dodson*, 231 S.W.3d at 716; *Northport Health Serv., Inc.* 158 S.W.3d at 171. In support of his allegation that he does not have Tourette's syndrome, Plaintiff has produced a consultation report Dr. Larson completed on April 11, 2007.[10] *See* docket entry #67, Ex. 35 at 46. In this report, Dr. Larson explains that Plaintiff was first diagnosed with Tourette's syndrome in the "mid 90's." *Id.* He goes on to state that the diagnosis is no longer "clinically relevant" because Plaintiff has ceased suffering from "debilitating symptoms." *Id.*

---

[10] The document does not indicate Dr. Larson's medical speciality.

Dr. Larson's report does *not,* in any way, support Plaintiff's libel claim.  First, it was written on April 11, 2007, almost a year *after* Dr.  Pepples noted in his June 7, 2006 letter, that Plaintiff appeared to suffer from Tourette's syndrome.  Thus, nothing in Dr. Larson's report casts any doubt on the accuracy of Dr. Peeples' statement that, based upon his review of Plaintiff's medical records as of June 7, 2006, Plaintiff appeared to suffer from Tourette's syndrome.

Further, Dr. Peeples makes it clear in his letter that he is quoting from Dr. Hoover's October 13, 2004 report, which states that Plaintiff suffers from Tourette's syndrome.  Plaintiff has not come forward with any evidence suggesting that the quote is inaccurate or that Dr. Peeples otherwise incorrectly summarized Plaintiff's medical records that were in existence on June 7, 2006.

Finally, Dr. Peeples did not state that Plaintiff's grievances were the result of his Tourette's syndrome.  Instead, he said that Plaintiff's grievances should be disregarded "if" they are the result of his Tourette's syndrome.  Further, at the time Dr. Peeples expressed this opinion, he was acting as an  expert witness for the government in the context of ongoing litigation involving Plaintiff.  There is  a well-established "litigation exception" that bars libel claims. *See In re IBP Confidential Bus. Docs. Litig.*, 755 F.2d 1330, 1311 (8th Cir. 1985); *Johnson v. Dover*, 143 S.W.2d 1112, 1113 (Ark. 1940).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's libel claim.

**2.      Tort of Outrage Claim**

Plaintiff contends that Defendants committed the tort of outrage by wrongfully interfering with his doctor/patient relationship with Dr. Stanley.  *See* docket entry #1.  Specifically, Plaintiff alleges that Dr. Peeples wrongfully caused Dr. Stanley to cancel surgery on Plaintiff's biceps tendon.  *Id.*

-12-

To state a claim for the tort of outrage, a plaintiff must allege that: (1) the defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "*extreme and outrageous*," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendants were the *cause* of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.  *Kiersey v. Jeffrey*, 253 S.W.3d 438, 441 (Ark. 2007); *Crockett v. Essex*, 19 S.W.3d 585, 564 (Ark. 2000) (emphasis added).

Dr. Peeples' medical opinion, as an expert witness, on the standard of care for the medical treatment Plaintiff' received for his injury, does not, in anyway, constitute the kind of extreme and outrageous conduct necessary to establish the tort of outrage under Arkansas law.  *See, e.g., Marlar v. Daniel*, 247 S.W.3d 473, 477 (Ark. 2007) (holding that an allegation that an appraiser intentionally gave an inaccurate opinion "falls far short of alleging conduct so extreme and outrageous as to be considered intolerable in a civilized society").

Additionally, Dr. Stanley, who is an orthopedic surgeon and Plaintiff's treating physician, was in no way bound by Dr. Peeples' opinions, as a non-treating expert witness. Thus, Plaintiff has also failed to come forward with any evidence of causation.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's tort of outrage claim.

### 3.        Interference with Doctor/Patient Relationship Claim

Finally, Plaintiff alleges that Defendants tortuously interfered with the doctor/patient

relationship by causing Dr. Stanley to cancel surgery on Plaintiff's biceps tendon.  *See* docket entry #1.  On its face, this claim has no merit.

Dr. Peeples was *not* one of Plaintiff's treating physicians.  He was retained by the government for the sole purpose of acting as an expert witness on the standard of care issue in *Patel v. United States*.  Dr. Stanley was Plaintiff's treating orthopedic physician.  It was his duty and obligation to make all treatment decisions regarding Plaintiff's biceps tendon injury, based solely on his medical judgment.  It is extremely far-fetched to suggest that Dr. Peeples' opinions, as an expert witness on the standard of care issue, had any impact on the doctor-patient relationship between Plaintiff and Dr. Stanley.

Accordingly, Defendants are entitled to summary judgment on this claim.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' Motion for Summary Judgment and Amended Motion for Summary Judgment (docket entries #16 and #91) be GRANTED, and that this case be DISMISSED, WITH PREJUDICE.

2.      The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order and Judgment adopting this Recommended Disposition would not be taken in good faith.

Dated this 21st day of April, 2010.

_____
UNITED STATES MAGISTRATE JUDGE